1,KUHN, J.
Defendant, Milvern Wesley Carpenter, Jr., appeals from a judgment ordering him to pay plaintiff, Diane Gayle Carpenter (now Marbury), the sum of $4,783.11, representing reimbursement to Ms. Marbury for one-half of a joint and solidary obligation of the parties and their former community. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Mr. Carpenter and Ms. Marbury were married in October of 1967. They were subsequently divorced in May of 1991. At the time of the divorce, the parties entered into a community property settlement dated May 28, 1991, through which Ms. Mar-bury received all stock in Superior Patio Sales, Inc., a corporation formed during the marriage and owned solely by the parties.
While the parties were married, Mr. Carpenter’s mother died. Following her death and also during the existence of the community, Mr. Carpenter, who apparently had signatory authority on a succession bank account, wrote checks on that ac *714 count which he deposited into the account of Superior Patio Sales.
As a result, the administratrix for the succession instituted proceedings against Mr. Carpenter for reimbursement of the succession funds deposited into the account of Superior Patio Sales. By stipulated judgment dated December 4, 1990, Mr. Carpenter was ordered to pay to the heirs of his mother’s succession the sum of $14,000.00, subject to an offset for the amounts he had previously paid in funeral expenses. Mr. Carpenter was also ordered to pay attorney’s fees and all court costs. This debt of Mr. Carpenter was not mentioned in the parties’ subsequent May 28, 1991 community property settlement.
Several years later, the administratrix for the succession sought to have the judgment against Mr. Carpenter declared to be a debt of the former community and to be a joint and solidary obligation of the former spouses. By judgment dated April 2, 1998, almost seven years after termination of the community, the court rendered judgment decreeing that the judgment previously rendered against Mr. Carpenter in 1990 was anoint and solidary obligation of Mr. Carpenter and Ms. Marbury and of their former community. The court additionally declared the 1990 judgment to- be an executory money judgment.
By check dated September 23, 1998, Ms. Marbury paid the full amount owed under the 1990 judgment, totaling $9,566.21. She then instituted this action against Mr. Carpenter in the Nineteenth Judicial District Court, seeking reimbursement of either the full amount or one-half of the amount she paid to satisfy the judgment. At the beginning of trial in this matter, counsel for Mr. Carpenter moved to have the matter dismissed for lack of subject matter jurisdiction, but the trial court denied the motion. After trial on the merits, the court rendered and signed a judgment in open court on September 20, 1999, against Mr. Carpenter in the amount of $4,783.11, representing one-half of the sum paid by Ms. Marbury on the 1990 judgment.
Mr. Carpenter appeals, contending that: (1) the Nineteenth Judicial District Court lacked subject matter jurisdiction to determine this claim of community reimbursement between former spouses (and that the Family Court should have had jurisdiction); and (2) the trial court erred in finding that he owed Ms. Marbury reimbursement of one-half of the debt she paid, because the debt had been incurred for a community corporation, ownership of which was conferred to Ms. Marbury in the community property settlement.
ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, Mr. Carpenter argues that this claim for reimbursement falls within the Family Court’s exclusive jurisdiction over all actions for the “settlement of claims arising from matrimonial regimes,” pursuant to La. R.S. 13:1401.
La. R.S. 13:1401 establishes the Family Court for the Parish of East Baton Rouge. Previously, La. R.S. 13:1401, as amended in 1993, provided that the Family Court had exclusive jurisdiction over actions for partition of community property and “for the settlement of claims arising from matrimonial regimes, when such actions arise as a result of divorce or annulment of marriage.” The Nineteenth Judicial District Court for the Parish of East Baton Rouge, however, retained jurisdiction of proceedings involving 14partition of community and the settlement of claims arising from matrimonial regimes when they did not arise as a result of divorce or annulment of marriage. La. R.S. 13:1401(A)(2); Boudreaux v. Boudreaux, 93-0951, p. 4, n. 1 (La.App. 1st Cir.5/5/95), 655 So.2d 465, *715 467 n. 1, writ not considered, 95-1444 (La.9/22/95), 660 So.2d 468.[1] La. R.S. 13:1401(A)(2) was again amended, effective August 15, 1999, to provide, in part, that the Family Court has exclusive jurisdiction over all actions for the settlement and enforcement of claims arising from matrimonial regimes, regardless of whether they arose as a result of divorce or annulment of marriage. The amendment also eliminated all language in the statute referring to jurisdiction in the Nineteenth Judicial District Court. Acts 1999, No. 533, § 1. This court has previously held that the 1999 amendment is procedural in nature and applies retroactively. Gerald v. Gerald, 99-1328, p. 3 (La.App. 1st Cir.6/23/00), 762 So.2d 1241, 1243; Ransome v. Ransome, 99-1291, p. 2, n. 2 (La. App 1st Cir. 1/21/00), 791 So.2d 120, 121, n. 2.
La. R.S. 13:1401 (A)(2) now provides that the Family Court for East Baton Rouge Parish has exclusive jurisdiction in the following proceedings:
(a) All actions between spouses or former spouses for partition of community property and property acquired pursuant to a matrimonial regime.
(b) All actions for the termination or modification of a matrimonial regime.
(c) All actions for the settlement and enforcement of claims arising from matrimonial regimes or the establishment thereof.
(d) All actions between former spouses seeking the enforcement of a judicial or contractual settlement of claims provided in this Subsection.
Since the 1999 amendment, this court has found La. R.S. 13:1401(A)(2) applicable in the Gerald and Ransome cases. In Gerald, the parties were divorced in 1993, and entered into a community property settlement agreement. The agreement was silent, however, as to the husband’s retirement benefits. In an action initiated five years later by the former wife, in which she sought to partition this remaining asset, this court affirmed the trial court’s finding that the Family Court had exclusive jurisdiction over the |flmatter. We determined that, because Gerald was an action between former spouses seeking partition of community property, the Family Court of East Baton Rouge Parish was the court of proper jurisdiction. Gerald, 99-1328 at p. 3, 762 So.2d at 1243.
In Ransome, this court concluded that a suit for breach of a community property agreement, brought four years after the agreement was executed, was also within the exclusive jurisdiction of the Family Court. The parties were divorced on January 27, 1993. On that same date, they executed a community property agreement settling and liquidating the community property that had existed between them during marriage. We found that, clearly, the partition agreement was incidental to the parties’ marriage and subsequent divorce. Therefore, because the matter involved actions between former spouses seeking enforcement of a contractual settlement of claims, the Family Court of East Baton Rouge Parish was the court of proper jurisdiction. Ransome, 99-1291 at p. 3, 791 So.2d at 121.
Both the Ransome and Gerald cases dealt with issues incidental to the parties’ marriages. The parties were trying to settle issues between themselves relating to their marriage. Such is not the *716 case here. This matter does not pertain to the classification of property or the determination of responsibility of debts as between the parties. In the case sub judice, there is a third party (the succession) seeking satisfaction of a judgment from solidary obligors. One of the obligors paid the obligation in full and is now seeking contribution from the other obligor. The issues to be resolved are not between the former spouses, as such, but as co-debtors obligated to the succession.
We do not find this matter to be an action for the settlement of claims arising from matrimonial regimes within the meaning of La. R.S. 13:1401(A)(2). Therefore, jurisdiction in the Nineteenth Judicial District Court was proper. ■
ASSIGNMENT OF ERROR . NUMBER TWO
In this assignment of error, Mr. Carpenter asserts that the trial court erred in finding that he owed Ms. Marbury a reimbursement of one-half of the debt paid by Ms. Marbury.
IfiThe essential elements of a solidary obligation are that the obligors are obliged to the same thing, that each is liable for the whole performance, and that the payment by one relieves the others of liability toward the obligee. La. C.C. art. 1794; Great Southwest Fire Ins. Co. v. CNA Ins. Companies, 557 So.2d 966, 968 (La.1990).
Additionally, La. C.C. art. 1797 provides that an obligation may be solidary though it derives from a different source for each obligor. Hoefly v. Government Employees Insurance Company, 418 So.2d 575, 576 (La.1982). Differing sources of liability do not preclude an in solido obligation; the obligation may be in solido even though the obligations of the obligors arise from separate acts or by differing reasons. It is the co-extensiveness of the obligations for the same debt, not the source of liability, that determines the solidarity of the obligation. James v. Formosa Plastics Corporation of Louisiana, 95-1794, p. 4 (La.App. 1st Cir.4/4/96), 672 So.2d 319, 322, writ denied, 96-1091 (La.11/22/96), 683 So.2d 285.
La. C.C. art. 1804 provides that among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary.[2] A solidary ob-ligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obli-gors no more than the virile portion of each. La. C.C. art. 1804.
The comments to article 1804 provide:
(b) Under this Article, the amount of each obligor’s virile portion is made to depend on the source of the obligation. The obligors’ portions of a contractual or quasi-contractual obligation are presumed to be equal in the absence of an obligor’s agreement or, in the case of quasi-contract, any express judicial declaration, to the contrary. That is what is meant by the expression “virile portion” in traditional doctrine.
At the trial of this matter, when Ms. Marbury was asked how the community debt was incurred, she responded it was because “we were married.” She testified that her former husband would take cash off the top from jobs of Superior Patio Sales and pocket the money. That left the corporation short, so Mr. Carpenter would have to take money |7from his mother’s account to cover the money he had kept for himself. She further stated she received all the stock of the corporation in the community property settlement and *717 paid the debts of the corporation as listed in the settlement. Mr. Carpenter testified that he never paid anything on the debt and that the money placed in the corporation from his mother’s account was used to pay bills of the corporation.
Ms. Marbury was never a party to the litigation in the succession proceeding that resulted in a judgment against Mr. Carpenter in 1990. When the community was settled in 1991, this debt was not mentioned, as it was not a community debt at that time. The parties became co-debtors on a solidary obligation to a third party as a result of the judgment in 1998. After a judgment debtor rule was filed against her, Ms. Marbury paid the full amount of the obligation and then sought reimbursement from her co-debtor for his share.
We cannot say the trial court was manifestly erroneous or clearly wrong in finding Mr. Carpenter responsible for one-half of the debt. The trial court determined that there was a judgment of $9,566.21, that it was a joint and solidary obligation of the two parties, paid in full by Ms. Marbury, and that each party was responsible for one-half of the debt. We find no manifest error in that decision.
CONCLUSION
For the above and foregoing reasons, the September 20, 1999 judgment of the trial court, in the amount of $4,783.11, is affirmed. Costs of this appeal are assessed against the appellant, Milvern Wesley Carpenter, Jr.
AFFIRMED.
WHIPPLE, J., dissents for reasons assigned.

. This amendment did not become effective until January 1, 1997, and only applied to "actions for partition of community property, for the settlement of claims arising from matrimonial regimes, and for contributions by one spouse to the education or training of the other spouse filed after December 31, 1996.” 1993 Acts, No. 485 § 2.

. In a tort action, the virile share is the proportionate degree of fault of each tortfeasor.